UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| MICHAEL BRANNIGAN, ATTORNEY-IN-FACT FOR PATIENT KP, and WORLDWIDE AIRCRAFT SERVICES, INC., d/b/a/ JET ICU,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHEM BLUE CROSS AND BLUE SHIELD,<br><br>Defendant. | CASE NO. |

## COMPLAINT

By way of this Complaint, and to the best of its knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiffs Michael Brannigan, Attorney-in-Fact for Patient KP and Worldwide Aircraft Services, Inc., d/b/a Jet ICU ("Jet ICU") (collectively, "Plaintiffs") bring this action against Anthem Blue Cross and Blue Shield ("Excellus" or "Defendant").

1. This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations, concerning Anthem's denial of reimbursement of Jet ICU for air ambulance services.

2. On August 18, 2019, patient KP, a member of defendant who was in the Dominican Republic after suffering a myocardial infarction while on a cruise was required to have emergency treatment in an acute medical facility. The patient was evacuated to Broward Medical Center in Ft. Lauderdale, Florida, a level one trauma center.

1

3. Defendant reimbursed the ground ambulance portion of Plaintiff's bill as medically necessary but refused to reimburse the air transportation invoice at all, claiming that it was medically unnecessary.

4. Specifically, defendant contended that according to its plan clinical guideline, the Patient could have received care in the Dominican Republic for what defendant characterized as the Patient's "heart problems." It said, "There were hospitals in the Dominican Republic that were able to provide the care that you needed."

5. This contention was made in Anthem's December 4, 2020 Adverse Benefit Determination. However, the denial was not made by its Health Plan Medical Director, who is not referenced in the Determination.

6. The Determination does not specify any hospital in the Dominican Republic by name or location. It does not show that any such hospital specializes in level one trauma care, which was required to treat the Patient's symptoms.

7. Defendant's denial also summarily ignored the Patient's physician, who diagnosed the patient and insisted on medical evacuation from the Dominican Republic to a level-one trauma center. Defendant placed its own health care decision making over the Patient's doctor.

8. Defendant's determination is further undermined by its decision to reimburse the land ambulance charges in Ft. Lauderdale, Florida. If Defendant had actually determined that the Patient's condition could have been treated in a hospital in the Dominican Republic and the patient brought to that hospital via land ambulance, it would not have paid for a land ambulance in Ft. Lauderdale. The fact that it did illustrates what is at issue: Defendant's arbitrary and capricious decision making to save money rather than an actual medical necessity determination.

9. After Plaintiff submitted an invoice on a CMS-1500 form to Defendant, as required, for $237,770.00, Defendant paid $0. The member continues to owe this amount.

10. In this action, Plaintiff seeks the usual and customary amount governed by Fla. Stat. § 627.513(5) for emergency services (net of the applicable copayment).

11. Alternatively, Plaintiff seeks the out-of-network out-of-area rate specified in the Anthem Certificate of Coverage issued to patient KP.

## JURISDICTION

8. The Court has subject matter jurisdiction over Jet ICU's claims under 28 U.S.C. § 1331 (federal question jurisdiction).

9. The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and Anthem systematically and continuously conducts business in the State of Florida, and otherwise has minimum contacts with the State of Florida sufficient to establish personal jurisdiction over it.

10. Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) Anthem transacts business in the Middle District of Florida; (b) Anthem conducts a substantial amount of business in the Middle District of Florida, including marketing, advertising and selling insurance products, and insures and administers group healthcare insurance plans both inside and outside the Middle District of Florida; and (c) Plaintiff transacts business in the Middle District of Florida.

## PARTIES

11. Plaintiff Michael Brannigan is Attorney-in-Fact for Patient KD pursuant to a Power of Attorney.  Mr. Brannigan is attorney and agent for Plaintiff Worldwide Aircraft Services, Inc., d/b/a Jet ICU., is an air ambulance company whose principal office is in Tampa, Florida. It was incorporated in Florida.

12. Defendant Anthem Insurance Companies, Inc., d/b/a Anthem Blue Cross and Blue Shield is a health care insurance company. Its principal office is in Indianapolis, Indiana where it was incorporated.

## FACTUAL ALLEGATIONS

13. Plaintiff provides air transport for critically ill and injured patients to medical facilities with fixed wing jet aircraft which are crewed by trained medical personnel.

14. Plaintiff must purchase or lease and periodically inspect and repair its aircraft in accordance with federal law and FAA rules and regulations; and maintain a qualified flight crew and medical staff to meet the demands of emergency air ambulance services.

15. These laws, rules, and regulations impose significant costs and expenses on Plaintiff.

16. After the patient became critically ill while on a cruise, and in the Dominican Republic, Plaintiff transported the patient to Broward Health Medical Center via air ambulance on August 18, 2019.

17. At the time Plaintiff performed its services, Plaintiff did not have a pre-negotiated contract with Defendant. Plaintiff was out-of-network with Defendant, meaning it was not part of Defendant's network of providers.

18. Under the Certificate, air ambulance services are covered when the member is taken from a medical emergency to a hospital.

19. Defendant did not contest that the air ambulance services were covered under the Certificate, that a medical emergency existed, or that the member should have chosen an in-network provider.

20. Fla. Stat. § 627.64194 states as follows:

(2) An insurer is solely liable for payment of fees to a nonparticipating provider of covered emergency services provided to an insured in accordance with the coverage terms of the health insurance policy, and such insured is not liable for payment of fees for covered services to a nonparticipating provider of emergency services, other than applicable copayments, coinsurance, and deductibles.  An insurer must provide coverage for emergency services that:

    (a)    May not require prior authorization.

    (b)    Must be provided regardless of whether the services are furnished by a participating provider or a nonparticipating provider.

    (c)    May impose a coinsurance amount, copayment, or limitation of benefits requirement for a nonparticipating provider only if the same requirement applies to a participating provider. . . .

(4) An insurer must reimburse a nonparticipating provider of services under subsection[] 2 . . . as specified in s. 641.513(5), reduced only by insured cost share responsibilities as specified in the health insurance policy . . .

21.    Section 641.513(5), Fla. Sta. states:

Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:

    (a) The provider's charges:

    (b)    The usual and customary provider charges for similar services in the community where the services were provided; or

    (c)    The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

22.    This statute requires that out-of-network providers must be reimbursed based on the lesser of the provider's billed charges, the negotiated rate between the provider and insurer, and the provider's usual and customary charges in the provider's community where the services were provided.

23.    Defendant did not negotiate a rate with Plaintiff.  Therefore, there was no negotiated rate.

24.    The statute provides that the usual and customary <u>provider</u> charges be reimbursed.

5

25. Defendant did not reimburse Plaintiff's usual and customary charges and violated Fla. Stat. § 627.64194.

26. Alternatively, Defendant breached the terms of the Certificate.

27. By way of background, the Blue Card Program and the National Accounts System, in which each Blue Cross Blue Shield ("BCBS") licensee must participate, including Defendant Excellus, was the direct result of the practice of all the BCBS licensees, under the direction of the Blue Cross Blue Shield Association ("BCBSA"), to engage in exclusive geographical market allocation.

28. Under this practice, each BCBS licensee was allocated an exclusive geographic market to offer health insurance. This practice continues today. It will not be substantially changed by the terms of the pending settlement agreement in the Subscriber Track in *In re BCBS Antitrust Litigation* Master File 2:13-cv-20000-RDP (N.D. Ala).

29. To make this mandatory agreement work, the BCBSA created Home and Host Plans.

30. The BCBS insurer in the exclusive geographical area through which the member is enrolled is the Home Plan. In this case, it was Excellus. The BCBS insurer located in the exclusive geographical area where the service is provided is referred to as the Host Plan.

31. These restrictions insulate the Home and Host plans against competition from each other in their respective exclusive geographic market areas.

32. When out-of-network providers are outside of the Home Plan's exclusive service area, they are considered to be "out-of-area" providers. Jet ICU was an out-of-network out-of-area provider. Under the Certificate, the reimbursement methodology for such a provider was distinct from an out-of-network in-area provider.

33. Under the Certificate, Jet ICU's emergency services were rendered outside Excellus' service area. The Certificate requires that under this circumstance the claim must be priced as required by applicable state or federal law – in this case, Fla. Stat. § 627.64194. The Certificate also states that "the Maximum Allowed Amount for out of area claims may be based on billed charges."

34. Defendant Anthem failed to reimburse Jet ICU either of the amounts set forth in the Certificate, violating ERISA.

35. Defendant Anthem refused to allow Jet ICU through Plaintiff Brannigan to appeal. Accordingly, any appeal is deemed futile.

35. Jet ICU through Mr. Brannigan nonetheless sent letters appealing the under-reimbursement, attaching medical documentation, and the CMS-1500 form (the bill). Plaintiffs exhausted their administrative remedies.

36. Plaintiff Brannigan has a Power of Attorney from Patient KD, providing ERISA standing.

37. 29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

38. Defendant did not provide the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder. Defendant did not provide full and fair review to Plaintiff.

39. Under ERISA, when an insurer fails to follow the procedures set out in the Plan, as here, the claimant is deemed to have exhausted his administrative remedies.

40. Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

## COUNT I

### CLAIM AGAINST DEFENDANT ANTHEM FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

41. Defendant Anthem is obligated to pay benefits to Plan participants and beneficiaries in accordance with the terms of the Plan's Certificate, and in accordance with ERISA. This obligation arises under ERISA.

42. Defendant Anthem violated its legal obligations under this ERISA-governed Plan when it denied payment to Plaintiff for emergency air ambulance services provided to Patient, in

8

violation of the terms of the Certificate and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

    44.    Plaintiff Jet ICU submitted invoices to Defendant Anthem for $237,770.00.

    45.    Defendant Anthem paid $0.

    56.    Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiffs' claim was originally submitted to Defendant Anthem. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant Anthem.

    **WHEREFORE**, Plaintiffs demand judgment in its favor against Defendant as follows:

    (a)    Ordering Defendant to recalculate and issue unpaid benefits to Plaintiffs;

    (b)    Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

    (c)    Awarding Plaintiffs prejudgment interest; and

    (d)    Granting Plaintiffs such other and further relief as is just and proper.

Dated: October 6, 2021

*/s/ George G. Angeliadis*
**George Angeliadis, Esq.**
Florida Bar No. 80081
**James L. Magazine, Esq.**
Florida Bar No. 847232
**Christopher Dyer, Esq.**
Florida Bar No. 68674
**The Law Offices of Lucas & Magazine, PLLC**
8606 Government Drive
New Port Richey, FL 34654
(727) 849-5353 [Tel]
(727) 845-7949 [Fax]
Service of Pleadings only: lucasmagazine@lucasmagazine.com
Secondary email: Mjarrett@lucasmagazine.com

Robert J. Axelrod (Pro Hac Vice)
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

*Attorneys for Plaintiffs Michael Brannigan, Attorney-in-Fact for Patient KP and Worldwide Aircraft Services, Inc., d/b/a Jet ICU*